IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

CECILIA V. GREGORIO,

        Plaintiff,

v.                                              NO. CV-10-00407-PHX-JRG

GEICO GENERAL INSURANCE
COMPANY, et al.,

        Defendants.

## MEMORANDUM OPINION & ORDER

Pending before the court is the defendant GEICO's Motion for Summary Judgment [Docket 52]. For the reasons explained below, the Motion is **GRANTED**.

**I.    Factual Background**

This case arises out of an automobile accident that occurred on February 19, 2005, in which an underinsured motorist collided with the plaintiff, Cecilia Gregorio. Prior to 2002, Ms. Gregorio carried a primary automobile insurance policy from GEICO for bodily injury liability and uninsured and underinsured motorist ("UM/UIM") coverage, each with a $100,000 per person and $300,000 per occurrence limit (100/300). According to the plaintiff, in 2002 she contacted GEICO with a question concerning her primary policy, and the GEICO representative asked if she was interested in adding an umbrella policy. In response, Ms. Gregorio stated that she was concerned about drivers without insurance and drivers without enough insurance. When asked whether the umbrella policy would help her, Ms. Gregorio asserts that the GEICO representative said "yes, that it would not be a problem." (Pl.'s Resp. to Def.'s Mot. Summ. J., at 2 [Docket 55].) The plaintiff does not recall how many GEICO employees she talked to in the course of obtaining an umbrella policy, and she also does not recall whether she or the GEICO

representatives ever used the words "uninsured" or "underinsured" in discussing the umbrella policy. Ms. Gregorio subsequently obtained an umbrella policy, and to be eligible for that policy, she increased her primary automobile insurance policy to $300,000 per person/per occurrence for both the bodily injury liability and UM/UIM coverage (300/300).

According to the terms of the plaintiff's "Personal Umbrella Liability Insurance Agreement," the policy "pay[s] damages on behalf of an insured arising of out an occurrence." "Damages" are defined as the total of "(a) damages an insured must pay: (1) legally; or (2) by agreement with [GEICO's] written consent; because of personal injury or property damage" and "(b) reasonable expenses an insured incurs at [GEICO's] request in the: (1) investigation; (2) defense; and (3) settlement of a claim or suit because of personal injury or property damage covered by this policy." (Umbrella policy attached herewith to Def.'s Mot. Summ. J. [Docket 53-2].) The six-page umbrella policy contains twenty-two exclusions. Exclusion 12 states that the policy does "not cover damages resulting from . . . [p]ersonal injury or property damage resulting from an uninsured or underinsured motorist claim unless a premium is shown for the uninsured or underinsured motorist coverage in the declarations." (*Id.*) It is undisputed that Ms. Gregorio's umbrella policy did not show a premium for UM/UIM coverage in the declarations.

As a result of the February 19, 2005 accident, Ms. Gregorio sought and received: (1) $15,000 in damages from the underinsured driver who collided with her; (2) $250,000 in damages from the State of Arizona; and (3) $300,000 in UIM coverage from GEICO under the limits of her primary policy. At that time, the plaintiff neither sought nor received anything from GEICO under her umbrella policy.

On January 26, 2009, Ms. Gregorio allegedly called GEICO to ask why she had not been paid under her umbrella policy. According to GEICO, it investigated her claim and determined

that coverage was unavailable. On August 13, 2009, the plaintiff's attorney wrote GEICO a letter demanding that GEICO pay the plaintiff the $1 million limit under the umbrella policy for the UIM coverage allegedly available. GEICO again denied the plaintiff's claim.

On December 11, 2009, Ms. Gregorio filed suit against GEICO in the Superior Court of the State of Arizona. She alleged breach of contract and tortious breach of the duty of good faith and fair dealing for failing to provide the plaintiff with the UIM coverage allegedly available under the umbrella policy. On February 24, 2010, GEICO removed the case to this court based on diversity jurisdiction, pursuant to 28 U.S.C. § 1332. On March 17, 2011, GEICO filed the pending Motion for Summary Judgment, arguing that the underinsured motorist claim is barred by the statute of limitations and, in the alternative, that there are no genuine issues of material fact as to the plaintiff's breach of contract claim and the breach of good faith and fair dealing claim.[1] The matter has been fully briefed and is now ripe for review.

## II.   Legal Standard

To obtain summary judgment the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete

---

[1] Because the court has determined that summary judgment is appropriate as to the plaintiff's breach of contract claim and breach of good faith claim, the court need not address the statute of limitations issue.

evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256.  Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).  The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position.  *Anderson,* 477 U.S. at 252.  Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Rivera v. Nat'l R.R. Passenger Corp.,* 331 F.3d 1074, 1078 (9th Cir. 2003).

## III.    Discussion

The plaintiff's first argument in opposition to the summary judgment motion is that GEICO's agent led her to "reasonably expect" that the purchase of an umbrella policy would provide UM/UIM coverage.  She then points to exclusion 12 in the policy, and she claims that she read it to include rather than exclude UM/UIM coverage.  Logic compels the conclusion that inclusion and exclusion cannot be true at the same time.  Pure contradiction would generally end a legal argument.  The plaintiff, however, persists in arguing that the doctrine of reasonable expectations applies.  I disagree.  The reasonable expectations doctrine, as applied in Arizona, is a rule of construction that enables courts to negate boilerplate terms of an insurance agreement that take away coverage provided for elsewhere in the contract.  The doctrine is applied in several situations; for instance, a court can negate a boilerplate term when that term could not be understood by a reasonably intelligent consumer or when an activity by the insurer creates an objective impression of coverage in the mind of a reasonable insured.  The doctrine does not, however, operate to add coverage where such coverage is nowhere stated in the policy.  In other

-4-

words, courts cannot invoke the doctrine to create a new bargain without any basis in the written terms of the agreement.

The second issue that Ms. Gregorio claims should be heard by a jury is whether GEICO breached its duty of good faith and fair dealing. The court rejects this argument as well, and accordingly **GRANTS** the defendant's Motion for Summary Judgment.

      a.    *The Doctrine of Reasonable Expectations*

Professor Robert E. Keeton's seminal article, *Insurance Law Rights at Variance with Policy Provisions*, identified what is now referred to as the "reasonable expectations doctrine." 83 HARV. L. REV. 961 (1970). Professor Keeton recognized that contemporary insurance contracts are contracts of adhesion. *Id.* at 966. He noted that with weak statutory and administrative regulation of these contracts, the courts have imposed judicial regulation by applying various doctrines, including the doctrine that ambiguities are resolved against the drafting party. *Id.* at 967. Underlying these doctrines, Professor Keeton identified a principle: "The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Id.* This principle embodies the proposition that "policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters." *Id.* Moreover, Professor Keeton explained that:

> An important corollary of the expectations principle is that insurers ought not to be allowed to use qualifications and exceptions from coverage that are inconsistent with the reasonable expectations of a policyholder having an ordinary degree of familiarity with the type of coverage involved. This ought not to be allowed even though the insurer's form is very explicit and unambiguous, because insurers know that ordinarily policyholders will not in fact read their policies.

*Id.* at 968. Professor Keeton even suggests that, "[i]t is a sound rule to strike down a surprising policy provision uniformly, sustaining even the claim of that occasional policyholder who can be shown to have known of its restrictive terms." *Id.* at 974.

Over time courts have applied different versions of the doctrine of reasonable expectations. One commentator aptly described the doctrine as "not a single concept but a bundle of related ideas." Mark C. Rahdert, *Reasonable Expectations Revisited*, 5 CONN. INS. L.J. 107, 111 (1998). For instance, some courts apply a version of the doctrine narrower than Professor Keeton's approach, invoking it only when the meaning of the term in dispute is ambiguous, and a policyholder's reasonable expectations are considered to determine its meaning. James M. Fischer, *The Doctrine of Reasonable Expectations Is Indispensable, If We Only Knew What For?*, 5 CONN. INS. L.J. 151, 155 (1998). Other courts only consider an insured's reasonable expectations when "a hidden 'trap or pitfall,' or fine print . . . [takes] away the protection seemingly given by the large print." RICHARD A. LORD, WILLISTON ON CONTRACTS, § 49:20 (4th ed. 2011). Additionally, some courts invoke the doctrine when the policy language is unambiguous, and a policyholder's reasonable expectations may control when they conflict with terms that negate coverage included somewhere else in the policy. Under this version of the doctrine, an insured's reasonable expectation of coverage may be created by actions of the insurer, such as statements made during negotiations. Stephen J. Ware, Comment, *A Critique of the Reasonable Expectations Doctrine*, 56 U. CHI. L. REV. 1461, 1472 (1989). Finally, courts have rejected the doctrine outright.[2]  RICHARD A. LORD, WILLISTON ON CONTRACTS, § 49:20 (4th ed. 2011).

---

[2] Commentators have questioned the factual assumptions underlying the doctrine. *See* Jeffrey E. Thomas, *An Interdisciplinary Critique of the Reasonable Expectations Doctrine*, 5 CONN. INS. L.J. 295, 296 (1998) ("It assumes

In Arizona, the supreme court first recognized the doctrine in *Darner Motor Sales v. Universal Underwriters Insurance Co.*, 140 Ariz. 383 (1984). The question before the court was whether to enforce "an unambiguous provision contrary to the negotiated agreement made by the parties because, after the insurer's representations of coverage, the insured failed to read the insurance contract." *Id.* at 387. The court recognized that the reasonable expectations doctrine "must be limited by something more than the fervent hope usually engendered by loss." *Id.* at 390. Echoing Professor Keeton, the court noted that insurance contracts are contracts of adhesion. *Id.* To mitigate the harsh results produced by strict application of the policy language, the court adopted the *Restatement (Second) of Contracts* approach, which is a "modification of the parol evidence rule when dealing with contracts containing boiler-plate provisions which are not negotiated, and often not even read by the parties." *Id.* at 391.

Section 211 of the *Restatement* provides that:

(1) Except as stated in Subsection (3), where a party to an agreement signs or otherwise manifests assent to a writing and has reason to believe that like writings are regularly used to embody terms of agreements of the same type, he adopts the writing as an integrated agreement with respect to the terms included in the writing.

(2) Such a writing is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.

(3) Where the other party has reason to believe that the party manifesting such assent would not do so if he knew that the writing contained a particular term, the term is not part of the agreement.

---

that in the process of buying insurance, insureds develop specific expectations about what will be covered by their policies. Research done generally in consumer psychology, and specifically about insureds' perceptions and buying behaviors, casts serious doubts on these assumptions. Although not conclusive, that research tends to show that average consumers generally do not develop the kinds of expectations assumed by judges applying the reasonable expectations doctrine.").

RESTATEMENT (SECOND) OF CONTRACTS, § 211 (1981).  The court explained that subsection (3) is the *Restatement*'s codification of the reasonable expectations doctrine.[3]  *Darner Motor*, 140 Ariz. at 391.  The structure of § 211 demonstrates that the reasonable expectations doctrine is an exception to the general rule, embodied in subsection (1), that a party to an agreement adopts it as integrated with respect to its terms.  In turn, subsection (3) allows a court to disregard a specific provision when one party is on notice that the other party would not consent to be bound by the agreement if it was aware of that provision.  The accompanying comment states that customers:

> are not bound to unknown terms which are beyond the range of reasonable expectations . . . .  An insured who adheres to the insurer's standard terms does not assent to a term if the insurer has reason to believe that the insured would not have accepted the agreement if he had known that the agreement contained the particular term.  Such a belief or assumption may be shown by the prior negotiations or inferred from the circumstances.  Reason to believe may be inferred from the fact that the term is bizarre or oppressive, from the fact that it eviscerates the non-standard terms explicitly agreed to, or from the fact that it eliminates the dominant purpose of the transaction.

*Darner Motor*, 140 Ariz. at 391-92 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 211 cmt. f.) (internal brackets omitted).  The rule of law adopted by the court, "in proper circumstances, will *relieve* the insured from certain clauses of an agreement which he did not negotiate, probably did not read, and probably would not have understood had he read them." *Id.* at 394 (emphasis added).  The doctrine of reasonable expectations in Arizona does not, however, allow a court to add coverage not otherwise available under the terms of the contract.  *See* Roger C. Henderson, *The Doctrine of Reasonable Expectations in Insurance Law After Two Decades*, 51 OHIO ST. L.J. 823, 848 (1990) (explaining that the doctrine as interpreted by the *(Second)*

---

[3] As commentators have pointed out, the *Restatement* approach is more conservative than Professor Keeton's because it assesses reasonable expectations from the insurer's perspective, rather than the insured's.  *See* Roger C. Henderson, *The Doctrine of Reasonable Expectations in Insurance Law After Two Decades*, 51 OHIO ST. L.J. 823, 848 (1990).  Professor Henderson observes, however, that later Arizona cases examine coverage from the insured's perspective.  *Id.* at 852; *Gordinier v. Aetna Casualty & Surety Co.*, 154 Ariz. 266, 273 (1987)

*Restatement* is applied "only to actual terms establishing exclusions, conditions, or definitions that affect the insured's expectations about another term, for example a coverage provision, in the policy. It cannot be applied to create a coverage provision that is not already present in the policy.").[4]

The Supreme Court of Arizona revisited the reasonable expectations doctrine in *State Farm Mutual Automobile Insurance Co. v. Bogart*, 149 Ariz. 145 (1986) (superseded by statute on other grounds). In *Bogart*, the term at issue, a combined excess–escape clause, applied to the non-owned vehicle coverage under an automobile liability insurance policy. *Id.* at 148. It excluded coverage when the non-owned vehicle is a rented vehicle with insurance that applies "in whole or in part" to the loss. *Id.* For instance, if a policy owner drove negligently and caused a wreck while in a rental car, the driver was found liable for $1 million, and the rental car insurance only covered liability up to $15,000, then the non-owned vehicle provision of the driver's automobile policy would not provide any additional coverage. *Id.* at 149. Not only was this provision highly unusual, it was also not apparent in the policy. The declarations page provided the non-owned automobile coverage with the stated limits. There was no exclusion in the exclusions section for rented vehicles. Instead, ten pages into the policy the "Other insurance" clause was included under "Conditions," between clauses on "Return on Premium" and "Arbitration." *Id.* at 152.

The court dismissed the notion that *Darner* is limited to misrepresentation actions. Instead, the court explained that, "*Darner* is . . . a methodology for interpretation of boilerplate provisions in transactions in which the seller of the product or service does business in such a

---

[4] Professor Henderson also noted that, "This limitation does not exist in the Keeton formulation." Roger C. Henderson, *The Doctrine of Reasonable Expectations in Insurance Law After Two Decades*, 51 OHIO ST. L.J. 823, 848 (1990). Although I do not agree with Professor Henderson on this latter point, that is not relevant here as the court must apply the doctrine as it exists in Arizona.

way that the factfinder can conclude it is improbable that the customer will read or understand the boilerplate." *Id.* at 151. After quoting the comment to the *Restatement (Second) of Contracts* adopted in *Darner*, the court found that the combined excess–escape clause was ambiguous in light of the policy as a whole and that it significantly modified the "dickered deal" of non-owned automobile coverage. *Id.* at 153. Thus, the court found the clause unenforceable. *Id.*

The following year, the Supreme Court of Arizona had another opportunity to examine the reasonable expectations doctrine. *Gordinier v. Aetna Casualty & Surety Co.*, 154 Ariz. 266 (1987). Plaintiff Tina Gordinier was in an accident with an uninsured motorist, and at that time she was separated from her husband Shawn. Tina was listed as a driver under her automobile policy, but the uninsured motorist benefits included in the policy were available only to "covered persons." *Id.* at 269. "Covered person" was defined as "you" or "any family member." *Id.* "You" referred to the named insured, who was Shawn, or "the spouse [of the named insured] if a resident of the same household." *Id.* A "family member" was defined as "a person related to you . . . who is a resident of your household." *Id.* at 269. Therefore, under the terms of the policy the plaintiff was not eligible for uninsured motorist benefits.

Recognizing the insurance policy as an adhesion contract, the court noted that special contract interpretation rules should apply, including the reasonable expectations doctrine as adopted in *Darner*. *Id.* at 271-72. In a "synthesis of the cases," the court observed that:

> Arizona courts will not enforce even unambiguous boilerplate terms in standardized insurance contracts in a *limited* variety of situations:
>
> (1) Where the contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights, the court will interpret them in light of the objective, reasonable expectations of the average insured;

> (2) Where the insured did not receive full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage;
>
> (3) Where some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured;
>
> (4) Where some activity reasonably attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied in the policy.

*Id.* at 273 (1987) (internal citations omitted). Here, the court recognized that actions taken by the insurer can create a reasonable expectation of coverage. The insurer's actions, however, can only be taken into account when the court is considering whether to enforce boilerplate terms in a contract. The above-language does not suggest that Arizona courts can consider an insurer's actions to supplement a policy with additional terms. Applying these four situations, the court found that taken as a whole, it "considerably doubt[ed] that the average customer attempting to check on his or her rights could readily understand them." *Id.* Additionally, the provision could be found to be unexpected or one that emasculates apparent coverage. The court reversed the grant of summary judgment for the defendants and remanded the case. *Id.* at 275.

In *Averett v. Farmers Insurance Co.*, the parties disputed the applicability of a term excluding coverage when an insured person is liable for bodily injury to a family member. 177 Ariz. 531, 532 (1994). The court explained that:

> When an exclusion, limitation, or escape clause runs contrary to what a reasonable insured would expect, or when it significantly diminishes coverage that the policy purports on its face to provide, the surrounding facts and circumstances must be considered to determine whether, and to what extent, there was a meeting of the minds between the contracting parties.

*Id.* at 534. Looking to the surrounding circumstances, the court noted that Averett told the insurance agent he wanted "full coverage" for his entire family. *Id.* Additionally, Averett testified that he did not receive a copy of the policy, and after the exclusion was called to his

attention, he did not understand it. *Id.* The court reversed summary judgment in favor of the defendant because it found that reasonable persons could disagree on the factual issues. *Id.* at 535. In 2001, the Supreme Court of Arizona again reversed summary judgment for the defendant in a case where the disputed term took away liability coverage when the driver is under the influence. *Philadelphia Indemnity Ins. Co. v. Lopez*, 200 Ariz. 9 (2001).

Apparent from the cases described above, Arizona's formulation of the reasonable expectations doctrine is expansive. *See* Jean Braucher, *Cowboy Contracts: The Arizona Supreme Court's Grand Tradition of Transactional Fairness*, 50 ARIZ. L. REV. 191, 214 (2008). The doctrine can be applied to unambiguous contracts. Moreover, an expectation of coverage that conflicts with terms in the policy that negate coverage included elsewhere in the contract can be created by an insurer's actions. In turn, the doctrine allows individuals to obtain more comprehensive insurance coverage than was originally bargained for. Although I favor a more restrictive interpretation of the reasonable expectations doctrine, I recognize Arizona's interpretation as the governing law.

Even in Arizona, however, the supreme court has recognized that the doctrine "must be limited by something more than the fervent hope usually engendered by loss." *Darner Motor Sales Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 390 (1984). A court can analyze a coverage dispute using the doctrine when the insured asks the court to negate definitions, conditions, and exclusions that take away coverage from a policy that otherwise provides such coverage. In essence, a court can subtract terms from a policy. *See Darner Motors*, 140 Ariz. at 394 (the doctrine "will relieve the insured from certain clauses of an agreement"); *Gordinier*, 154 Ariz. at 272 ("Arizona courts will not enforce even unambiguous boilerplate terms in standardized insurance contracts in a *limited* variety of situations."); *Averett v. Farmers Ins. Co.*,

177 Ariz. at 534 (the doctrine applies when "an exclusion, limitation, or escape clause runs contrary to what a reasonable insured would have expected, or when it significantly diminishes the coverage that the policy purports on its face to provide").  Courts cannot, however, invoke the doctrine to add language to a policy to grant coverage not otherwise provided for.  To do so would mark a significant departure from the way the doctrine has been applied in Arizona.  Instead of functioning as a check on insurance companies' use of boilerplate provisions to take away coverage, the doctrine would enable courts to create coverage entirely outside the four corners of the contract, rendering any limits on existing coverage meaningless.

        *b.*      *Analysis*

Because the reasonable expectations doctrine cannot be used to add coverage that is nowhere stated in the policy, the court must first determine if any of the terms in Ms. Gregorio's umbrella policy provide UM/UIM coverage.  The "Coverage" section of her policy states that it pays "damages on behalf of an insured arising out of an occurrence." (Umbrella policy attached herewith to Def.'s Mot. Summ. J. [Docket 53-2].)  Damages are defined as "(a) damages an insured must pay: (1) legally; or (2) by agreement with [GEICO's] written consent; because of personal injury or property damage" and "(b) reasonable expenses an insured incurs at [GEICO's] request in the: (1) investigation; (2) defense; and (3) settlement of a claim or suit because of personal injury or property damage covered by this policy." (*Id.*)  The umbrella policy is unambiguous on its face; it provides coverage only when the plaintiff must pay someone else damages, *i.e.*, when the plaintiff is sued.  This is consistent with the common understanding that "[a]n umbrella policy is extra liability insurance that protects you if you are sued."  Tali Yahalom, *Umbrella Insurance?*, CNN MONEY (JUNE 3, 2011), http://money.cnn.com/2011/06/03/pf/saving/insurance_policies.moneymag/index.htm; *see also*

Joseph B. Treaster, *Umbrella Coverage for Preventing Your Ruin*, N.Y. TIMES, March 18, 2008, at H10.  Nowhere in the terms of her policy is Ms. Gregorio provided with coverage for her personal injuries as a result of an accident with an underinsured motorist.  To provide this type of coverage, the court would, in effect, add terms to the policy, creating a new bargain that has no basis in the written agreement.  Therefore, the court will not apply the reasonable expectations doctrine to the circumstances surrounding the coverage dispute.

The existence of and the parties' focus on exclusion 12 does not affect the court's decision.[5]  In the Arizona Supreme Court cases, if the reasonable expectations doctrine applied to negate an exclusion, condition, or definition, then the remaining terms of the policy would provide coverage.  In contrast, if the court disregarded exclusion 12, the remaining terms of the policy would not provide coverage.  This unnecessary confusion arises from GEICO's poorly drafted form agreement.  Insurers are almost universally statutorily required to offer UM/UIM coverage as part of their *primary* motor vehicle policies.  The vast majority of courts have found that these statutes do not require insurers to offer UM/UIM coverage in their umbrella policies because these policies "are designed to protect against an infrequent risk of catastrophic loss in the form of excess judgments."  Lisa K. Gregory, Annotation, *"Excess" or "Umbrella" Insurance Policy as Providing Coverage for Accidents with Uninsured or Underinsured Motorists*, 2 A.L.R.5TH 922 (1992).  A few courts, however, have held that insurers are required to offer UM/UIM coverage in umbrella policies.  *Id.*  As a result, GEICO is required to offer UM/UIM coverage in eight states.  I assume that Ms. Gregorio's umbrella policy is a standard form used in all fifty states.  Therefore, exclusion 12 has an effect in just eight states.  In those, it

---

[5] Exclusion 12 states that the policy does "not cover damages resulting from . . . [p]ersonal injury or property damage resulting from an uninsured or underinsured motorist claim unless a premium is shown for the uninsured or underinsured motorist coverage in the declarations."  (Umbrella policy attached herewith to Def.'s Mot. Summ. J. [Docket 53-2].)

operates to add UM/UIM coverage when there is a premium listed in the declarations, even though the language in the "Definitions" and "Coverage" sections does not, by its terms, provide UM/UIM coverage. In Arizona, however, "[a]n insurer is not required to offer, provide or make available [UM/UIM coverage] in connection with any . . . umbrella policy." ARIZ. REV. STAT. ANN. § 20-259.01(L). GEICO does not offer UM/UIM coverage in Arizona, and of course exclusion 12 is therefore superfluous. By providing for inclusion of UM/UIM coverage in a few states by way of an exclusion, plus a premium shown in the declarations, that is included in its umbrella policies in all fifty states, this portion of the policy is inartfully drafted. The court, however, need not depart from the above principle because of the existence of this exclusion.

    *c.*    *Bad Faith*

In the Complaint Ms. Gregorio alleges that GEICO "intentionally denied Plaintiff's claim for contract benefits when she was in a collision with an underinsured motorist, without a reasonable basis for such action." (Compl. ¶ 15 [Docket 1-1].) According to the Complaint, GEICO further "knew or should have known that it acted without a reasonable basis" when it denied her claim, and accordingly breached its duty of good faith and fair dealing by failing to provide the requisite coverage. (*Id.*)[6] "Due to the fact that Plaintiff cannot prove the breach of contract claim, GEICO maintains that it is entitled to summary judgment on Plaintiff's claim of insurance bad faith." (Def.'s Mot. Summ. J., at 12 [Docket 52].)

To prove the tort of bad faith in Arizona, an insured must first show the absence of a reasonable basis for denying benefits and then demonstrate that the insurance company either knew or recklessly disregarded the fact that it did not have a reasonable basis for denying

---

[6] In the Plaintiff's Response to GEICO's Motion for Summary Judgment, the plaintiff raises—for the first time—new claims that GEICO acted in bad faith for "failure to explain coverage to the insured" and failure to "investigate other possible coverage." (Pl.'s Resp. Def.'s Mot. Summ. J., at 10-11 [Docket 55].) The court, however, will address only those claims properly raised in the Complaint.

benefits. *Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 506-07 (1992) (citing *Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188, 190 (1981)). If the actions taken on the part of the insurance company denying the claim were objectively reasonable, then the insurance company will not be found to have acted in bad faith. *Id.* at 507. Moreover, "[m]ere negligence or inadvertence is not sufficient—the insurer must intend the act or omission and must form that intent without reasonable or fairly debatable grounds." *Rawlings v. Apodaca*, 151 Ariz. 149, 160 (1986).

As discussed in the previous section, the language of the umbrella policy is plain and unambiguous and does not provide the plaintiff with UIM coverage. Therefore, GEICO had an objectively reasonable basis for denying coverage. Because GEICO had an objectively reasonable basis for denying coverage, it is not necessary to examine GEICO's intent, or lack thereof. Accordingly, the court **GRANTS** GEICO's Motion for Summary Judgment as to the bad faith claim.

**IV.  Conclusion**

Based on the foregoing, the court **GRANTS** the defendant's Motion for Summary Judgment [Docket 52]. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     September 15, 2011

Joseph R. Goodwin, Chief Judge